IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| THE TRANSFORMATION PROJECT, INC., and JACK FONDER,<br><br>Plaintiffs,<br><br>v.<br><br>GOVERNOR KRISTI NOEM, in her official capacity only, and SECRETARY OF HEALTH MELISSA MAGSTADT, in her official capacity only,<br><br>Defendants. | Case No. __23-4021__<br><br>**COMPLAINT** |

**INTRODUCTION**

1. In September 2022 the State of South Dakota signed a contract (the "Contract") with The Transformation Project, Inc. ("TTP") to fund and create a Community Health Worker ("CHW") Program. The funds from the State—totaling $135,747.92—came from a federal Centers for Disease Control and Prevention grant. The federal grant included a funding preference for underserved communities.

2. TTP is a South Dakota non-profit organization that provides resources for kids, parents, educators, and allies of the transgender, gender non-conforming, and broader LGBTQ2S (lesbian, gay, bisexual, transgender, queer, and two-spirited) community. These resources include suicide prevention, support for individuals, families, and communities, and assistance navigating healthcare and social services.

3. TTP adhered to the terms of its Contract with the State.

1

4. In December of 2022, the State's Contract with TTP suddenly became a political liability. As one example, the Daily Signal, an online publication, brought TTP's Contract, as well as TTP's upcoming Gender Identity Summit, to Governor Kristi Noem's attention.[1]

5. The purpose of the Gender Identity Summit, which TTP planned to host in January 2023 in connection with Sanford Health, was to review the needs of transgender patients in healthcare. Sessions during the event shared information regarding suicide prevention, gender-affirming care, cultural competency, and personal stories of transgender individuals and healthcare workers.

6. Bowing to political pressure, the State abruptly terminated the Contract on December 16, 2022. The State did so without any prior allegation of a material breach of the Contract. In a statement provided to The Daily Signal, Governor Noem stated "South Dakota does not support this organization's efforts, and state government should not be participating in them."

7. South Dakota's decision to cancel the Contract was based purely on national politics. The State knew about and initially supported TTP's mission; in fact, the State told TTP to request more money than it originally sought. The Contract was only terminated after a conservative national media outlet contacted state officials. In response to a potentially negative news cycle, the State cancelled TTP's Contract, issued

---

[1] Tyler O'Neil, *Exclusive: Kristi Noem's Health Department Fires Transgender Group Ahead of 'Gender Summit,'* The Daily Signal (Dec. 16, 2022), https://www.dailysignal.com/2022/12/16/exclusive-kristi-noem-terminates-health-dept-contact-transgender-activist-group-hospital-summit/.

a statement, and subsequently alleged breaches of contract in an attempt to apply a thin gloss of contract law to the State's discriminatory actions.

8. These actions, particularly when combined with contemporaneous context and comments from State officials, make clear that the Contract was terminated solely because TTP supports, represents, and serves transgender people. Any other rationale is simply pretextual.

9. The State's actions violate § 1557 of the Affordable Care Act, which prohibits discrimination in the administration of federal grants. Those actions also violate the Equal Protection Clause of the United States Constitution.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 because this complaint involves a claim for the protection of civil rights under 42 U.S.C. § 1983, which provides for redress when a person is deprived of any rights, privileges, or immunities secured by the Constitution; 42 U.S.C. § 18116, which provides a private right of action under the Affordable Care Act for discrimination on the basis of sex, and, additionally or alternatively, gender; and 42 U.S.C. § 1988, which authorizes the recovery of attorneys' fees.

11. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 *et seq.*, Rules 57 and 65 of the Federal Rules of Civil Procedure, and the general legal and equitable powers of this Court.

12. Venue is appropriate under 28 U.S.C § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the District of South Dakota and Defendants are located in this judicial district.

## PARTIES

13. TTP is a 501(c)(3) non-profit organization registered in Sioux Falls, South Dakota. TTP's mission is to support and empower transgender individuals and their families while educating communities in South Dakota and the region about gender identity and expression. TTP is particularly focused on improving the health and safety of transgender youth. A transgender person is someone whose gender identity and/or gender expression differ from the sex they were assigned at birth.

14. Under the Contract, TTP operated a health program or activity that received financial assistance from the Federal government.

15. The populations TTP supports are underserved by existing healthcare resources and have disproportionately negative health outcomes. In South Dakota, 53% of LGBTQ2S youth have seriously considered suicide in the past year, and 19% report a suicide attempt in the last year.[2] LGBTQ2S youth in South Dakota face staggeringly high rates of anxiety (75%), depression (58%), and threats of harm due to their sexual orientation or gender identity (40%).[3] 80% experience discrimination; 59% desire mental

---

[2] The Trevor Project, 2022 National Survey on LGBTQ Youth Mental Health South Dakota 2, https://www.thetrevorproject.org/wp-content/uploads/2022/12/The-Trevor-Project-2022-National-Survey-on-LGBTQ-Youth-Mental-Health-by-State-South-Dakota.pdf.
[3] *Id.* at 2, 4.

health care but report not having access.[4] LGBTQ2S adults similarly face discrimination and disparities in health care treatment and access.[5]

16.  TTP is a trusted advocate for the LGBTQ2S community in South Dakota. The development of a CHW Program within TTP serves the health care needs of LGBTQ2S South Dakotans, thereby satisfying the purpose of the grant.

17.  Jack Fonder is a CHW. He completed his CHW training on December 7, 2022. TTP hired Fonder using the grant funds provided in the Contract. Fonder is uniquely positioned to serve LGBTQ2S South Dakotans because he is transgender. Fonder lives in South Dakota.

18.  Defendant Governor Kristi Noem is the Governor of South Dakota. Governor Noem is responsible for the faithful execution of the law in the State. S.D. Const. art. 4, § 3. She is also responsible for "supervis[ing] the official conduct of all executive and ministerial officers" and "see[ing] that the laws of the state are faithfully and impartially executed." S.D.C.L. § 1-7-1(1)-(2). Governor Noem is sued in her official capacity only.

19.  Defendant Secretary of Health Melissa Magstadt is the South Dakota Secretary of Health.[6] Secretary Magstadt is the head of the South Dakota Department of

---

[4] *Id.* at 3-4.
[5] Center for American Progress, Protecting and Advancing Health Care for Transgender Adult Communities (Aug. 18, 2021), https://www.americanprogress.org/article/protecting-advancing-health-care-transgender-adult-communities/.
[6] Secretary Magstadt was not the Secretary of Health when the events alleged in this Complaint occurred. The Secretary at the time, Joan Adam, resigned within days of the events alleged in this Complaint. *See* Morgan Matzen, *Joan Adam Retires as secretary for*

Health and administers all functions of the Department. Secretary Magstadt is sued in her official capacity only.

20. The state of South Dakota, through Governor Noem and Secretary Magstadt, administers funds provided by the Federal government for community health worker programs and grants.

## ADDITIONAL FACTUAL ALLEGATIONS

### I. TTP's grant application to the State.

21. In 2021, the State received a funding grant from the CDC, a United States Department of Health and Human Services ("HHS") entity, to fund CHW positions across South Dakota. Some of the grant funds were allocated to fund CHW programs at individual sites operated by independent organizations.[7]

22. Because South Dakota's CHW grant program is funded by HHS, the State is required to comply with all applicable federal laws in its use, allocation, and disbursement of HHS funds, including § 1557 of the Affordable Care Act.

23. TTP submitted its CHW application to the State on May 31, 2022. In its application, TTP stated that it would use grant funds to "employ a cross-trained CHW . . . . The position will engage and provide direct support to transgender youth,

---

*the South Dakota Department of Health*, Argus Leader (Dec. 19, 2022), https://www.argusleader.com/story/news/2022/12/19/south-dakota-department-health-doh-secretary-joan-adam-retires/69740785007/. Secretary Magstadt was appointed on December 22, 2022. Pursuant to Fed. R. Civ. P. 25(d), the change in officials does not affect the validity of this official-capacity claim.

[7] Community Health Worker Collaborative of South Dakota, Request for Applications, https://chwsd.org/requests-for-funding-application/ (last visited Feb. 6, 2022).

young adults, families, and their support networks to ensure all Transformation Project . . . clients receive appropriate care, services, and resources for their needs."

24. TTP originally requested a grant of $45,907. Upon submission of its application, TTP was contacted by the State and told that TTP should increase its funding request. TTP subsequently received a CHW grant of up to $136,000.

25. TTP signed the Contract on September 4, 2022. The State, through two Department of Health directors, signed the Contract on September 9, 2022, and September 12, 2022, respectively. TTP received a final, signed Contract from the State on September 13, 2022.

26. Upon approval of the grant application, TTP and the State executed the Contract. The Contract provided for a term beginning on June 1, 2022, and ending May 31, 2023—which term aligned with the State's fiscal calendar.

27. A copy of this Contract is attached as Exhibit A.

II. **Governor Noem receives political pressure to discriminate against transgender people.**

28. In 2021, Governor Noem "sparked conservative outrage by vetoing [an anti-trans youth sports] bill earlier that year—a move that dampened her status as a rising Republican star[.]"[8] The National Review asserted that Governor Noem's veto

---

[8] Nate Hochman, *How Gender Ideology Conquered South Dakota*, National Review (Jan. 5, 2023), https://www.nationalreview.com/2023/01/how-gender-ideology-conquered-south-dakota/.

was the result of pressure from the NCAA, big businesses, political donors, and lobbyists in South Dakota.[9]

29. Following her 2021 veto, Governor Noem "faced a backlash among conservatives—including many who had previously praised her governorship"[10] for being "unwilling to stand up" for anti-transgender legislation.[11]

30. After the veto, representatives of 47 conservative organizations across the country publicly criticized Governor Noem's veto of HB 1217.[12]

31. Following political criticism, Governor Noem has attempted to portray herself as an opponent of transgender people. In 2022, Governor Noem referred to a federal regulation regarding nondiscrimination of transgender people as part of the "liberal agenda."[13] She brought another anti-transgender athlete bill in 2022 and claimed it would be the strongest in the nation. A spokesperson for the Governor

---

[9] Nate Hochman, *Who Is Kristi Noem, Really?*, National Review (Sept. 15, 2021), https://www.nationalreview.com/2021/09/who-is-kristi-noem-really/.
[10] The Editors, *Kristi Noem's Disappointment Capitulation*, National Review (Mar. 26, 2021), https://www.nationalreview.com/2021/03/kristi-noems-disappointing-capitulation/.
[11] *See id.*
[12] Letter to Governor Noem from Norman Woods, et al. (Mar. 29, 2021), https://familypolicyalliance.com/wp-content/uploads/2021/03/Open-Invitation-to-Governor-Noem_Coalition-Letter.pdf.
[13] Andrew Murray & Thomas Phippen, *Gov. Kristi Noem says she's fighting to protect 'our way of life' from Biden government's 'overreach'*, Fox News (June 7, 2022), https://www.foxnews.com/politics/kristi-noem-south-dakota-primary-usda-school-lunch-transgender-sports-bill.

likened inclusion of transgender people to "terrorists" regarding their participation in sports.[14]

32. On December 4, 2022, Minnesota-based Alpha News first reported on TTP's January 2023 Gender Identity Summit, which drew attention to TTP.[15]

33. Sometime before December 16, 2022, The Daily Signal reached out to the Governor's office with questions about TTP and the Gender Identity Summit.[16]

### III. The State's pretextual termination of the Contract.

34. In response to that political pressure, the State came up with a plan to terminate TTP's Contract.

35. TTP's quarterly report for September 1 to November 31, 2022, was due on December 15, 2022.

36. A coordinator from the Community Health Worker Collaborate of South Dakota emailed TTP on December 15, 2022 claiming that the State was looking for TTP's progress report and asked that it be submitted as soon as possible so it could be sent to the State.

37. TTP timely submitted its quarterly report on December 15, 2022.

---

[14] Morgan Matzen, *Noem's chief of staff says participation in sports by transgender athletes 'sort of like terrorism'*, Argus Leader (Jan. 26, 2022), https://www.argusleader.com/story/news/education/2022/01/26/mark-miller-gov-kristi-noem-chief-staff-calls-trans-sports-participation-like-terrorism/9225914002/.
[15] O'Neil, *supra* note 1; *see also* Stephen Kokx, *Sanford Health to hold 'Midwest Gender Identity Summit' with group promoting child sex changes*, Alpha News (Dec. 4, 2022), https://alphanews.org/sanford-health-to-hold-midwest-gender-identity-summit-with-group-promoting-child-sex-changes/.
[16] O'Neil, *supra* note 1.

38. In a letter dated December 16, 2022, the State notified TTP that the Contract was terminated for cause. The letter alleged that TTP failed to perform its obligations under the Contract and then listed ten of the obligations enumerated in the Contract without specifying any specific acts or omissions of TTP in violation of the Contract's terms. A copy of this letter is attached as Exhibit B.

39. The State's purported reasons for terminating the Contract are pretextual. Rather, TTP and the population it serves were targeted by the State in an act of unconstitutional and unlawful discrimination based on sex and gender.

40. In contrast to the intentional vagueness of the termination letter, the State made it clear that its sudden reversal was based on animosity and hostility toward transgender South Dakotans. Governor Noem stated, "I terminated a contract with The Transformation Project. South Dakota does not support this organization's efforts, and state government should not be participating in them."[17]

41. Despite her constitutional and statutory obligation to oversee and manage state government, Governor Noem attempted to distance herself from the grant to TTP. According to Governor Noem, "The [C]ontract [with TTP] was signed without my prior knowledge or approval. When I became aware of it, I took swift action."[18]

42. Within days, the State's discrimination against TTP had the desired political effect: a group of 14 conservative leaders sent a letter to Governor Noem

---

[17] Letter from Governor Noem to Board Members of the South Dakota Family Heritage Alliance (Dec. 21, 2022), https://fhaaction.org/wp-content/uploads/here-.pdf; *see also* O'Neil, *supra* note 1.
[18] *Id.*

"commend[ing] [her] action directing the Department of Health to cancel its contract with The Transformation Project as an acknowledgment of the state's reckless engagement with trans ideology."[19]

43.     Once this letter was made public, Governor Noem's Chief of Communications insisted that Governor Noem had already taken action against transgender South Dakotans and would continue to take such actions in the future.[20]



---

[19] Letter to Governor Noem from Penny Young Nance, et al. (Dec. 20, 2022), https://first-heritage-foundation.s3.amazonaws.com/live_files/2022/12/Gov-Noem-Letter-re-Midwest-Gender-Identity-Summit-12-20-2022.pdf.
[20] @IanTFury, Twitter (Dec. 20, 2022, 1:59 PM), https://twitter.com/IanTFury/status/1605291730726682625.

44. TTP is unaware of any other CHW contracts that were scrutinized or terminated by the State in a similar manner. TTP is also unaware of any other CHW contracts or grants administered by the State that serve the transgender community.

45. The State's comments and the timing of its actions make clear that the termination of the Contract was a political decision based on animus toward TTP and the population it serves, and not on any purported breach of the Contract.

46. The Governor and other state officials acted under color of state law when they engaged in the unconstitutional discrimination described above. That discrimination also violated federal law and regulations governing the State's distribution of federal funds.

**IV.  TTP's continued work on behalf of vulnerable South Dakotans.**

47. Despite the State's unconstitutional and unlawful termination of the Contract, TTP plans to continue its work serving South Dakotans. The loss of the grant money in the Contract, however, makes TTP's work more difficult. TTP had planned to open an LGBTQ center in South Dakota, but now must redirect those funds to continue supporting its CHW program. TTP's CHW program today is without State training, support, and guidance it would have received under the grant and Contract.

48. TTP's CHW program was already serving transgender people when the Contract was terminated. Although TTP has decided to continue its CHW program, the program and resources provided to clients have been harmed by the Contract's termination.

49. TTP hired Fonder, whose salary was supposed to be paid for by the grant funds under the Contract. Because the State unconstitutionally and unlawfully terminated the Contract, TTP has expended significant time, money, and effort to fundraise in an effort to cover the financial shortfall created by the State's abrupt termination of the Contract. These efforts have not fully made up for the shortfall created by the Contract's termination, and TTP must divert resources from other needs to pay for staff positions that were previously and expected to be funded under the Contract.

50. The State's decision to target TTP has had other negative impacts. For example, TTP's office has received death threats as a result of the negative attention created by the State's discrimination. TTP filed a police report and has taken other proactive steps to protect its employees. It has also had to increase security at events and consider changing venues based on security concerns.

51. Nonetheless, TTP plans to apply for future grants from—and enter into contracts with—the State, particularly focusing on suicide prevention and mental health services in South Dakota.

52. Fonder plans to continue to work with TTP, though funding for his position with TTP has not been restored since the Contract's termination. He will also continue his work as a CHW and will participate in future grant applications to the State.

## CLAIMS FOR RELIEF

### Count I: Violation of Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116 Against all Defendants

53.     Plaintiffs incorporate all previous paragraphs of this Complaint as if fully set forth herein.

54.      Section 1557 of the Affordable Care Act, codified at 42 U.S.C. § 18116, prohibits discrimination on the basis of sex and gender in the administration of federal HHS programs, including the grant program involved in this case.

55.     TTP serves transgender people, a group protected from discrimination under federal law. Fonder is a transgender person. TTP represents transgender people and serves transgender people through its CHW program.

56.     Defendants terminated the State's Contract with TTP because they sought to discriminate against transgender people.

57.     Defendants would not have terminated the Contract if TTP did not represent and serve transgender people, and additionally or alternatively if Jack Fonder was not a transgender person.

58.     Defendants' pretextual termination of the State's Contract with TTP, which eliminated the funding for Fonder's CHW position and others, is the result of purposeful and intentional discrimination on the basis of sex and gender in violation of federal law.

59.     Defendants' violation of section 1557 of the Affordable Care Act caused economic harm to TTP, Fonder, its members, and the people it serves.

## Count II: Equal Protection
## Against all Defendants

60. Plaintiffs incorporate all previous paragraphs of this Complaint as if fully set forth herein.

61. The Fourteenth Amendment to the United States Constitution, enforceable pursuant to Title 42 U.S.C. § 1983, provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

62. The Governor and Secretary of Health are state officials acting under color of state law.

63. Defendants' actions treat TTP and Fonder differently from other CHW grant recipients, and the difference in treatment is the result of purposeful and intentional discrimination on the basis of sex and gender.

64. Defendants' actions are not substantially related to an important government interest. Alternatively, Defendants' actions are not rationally related to a legitimate governmental purpose.

65. Accordingly, Defendants' actions violate the Equal Protection Clause of the United States Constitution and 42 U.S.C. § 1983.

## Count III: Declaratory Relief, 28 U.S.C. §§ 2201 *et seq.*
## Against All Defendants

66. Plaintiffs incorporates all previous paragraphs of this Complaint as if fully set forth herein.

67. A dispute currently exists with respect to the rights and obligations of Plaintiffs, on one hand, and Defendants, on the other.

68.     Plaintiffs are entitled to a declaratory judgment finding that the foregoing actions of Defendants violate 42 U.S.C. § 18116, the Equal Protection Clause of the Constitution of the United States, and 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court:

a. Pursuant to 28 U.S.C. §§ 2201 and 2202, declare that Defendants' conduct is unlawful;

b. Award to Plaintiffs their costs, expenses, disbursements, and reasonable attorneys' fees in this action pursuant to 42 U.S.C. § 1988; and

c. Grant other and further relief, including potential permanent injunctive relief, and other relief both general and specific, at law, or in equity, as the Court finds is just and proper.

Dated: February 9, 2023

                Respectfully submitted,

            By: */s/ Brendan V. Johnson*
                Brendan V. Johnson (SD Bar # 3263)
                Erica A. Ramsey (SD Bar # 4901)
                Timothy W. Billion (SD Bar # 4641)
                ROBINS KAPLAN LLP
                140 North Phillips Ave, Suite 307
                Sioux Falls, SD 57104
                Tel: 605-335-1300
                BJohnson@RobinsKaplan.com
                ERamsey@RobinsKaplan.com
                TBillion@RobinsKaplan.com

            *Attorneys for Plaintiffs*

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
THE TRANSFORMATION PROJECT, INC., and JACK FONDER,

**(b)** County of Residence of First Listed Plaintiff: Minnehaha
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Brendan Johnson   (605) 335-1300
Robins Kaplan LLP
140 North Phillips Ave., Suite 307
Sioux Falls, SD 57104

### DEFENDANTS
GOVERNOR KRISTI NOEM, in her official capacity only, and SECRETARY OF HEALTH MELISSA MAGSTADT, in her official capacity only

County of Residence of First Listed Defendant: _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Marty Jackley, Attorney General   (605) 773-4106
Office of the Attorney General
1302 E. Hwy 14, Suite 1
Pierre, SD 57501

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1  U.S. Government Plaintiff
- [X] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| | | | ☐ 863 DIWC/DIWW (405(g)) | |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | [X] 440 Other Civil Rights / **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/Accommodations / ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education / ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §§ 1983, 18116 and 28 U.S.C. § 2201
Brief description of cause:
Declaratory relief for civil rights violations

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  [X] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE: February 9, 2023
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____